TITAN INTERNATIONAL, INC., et. al, Plaintiffs,

v.

George BECKER, et. al, Defendants.

No. 00–3257.

United States District Court, C.D. Illinois, Springfield Division.

Oct. 31, 2001.

Robert W. Tarun, Hal B. Merck, Chicago, IL, Brett K. Gorman, Quincy, IL, Cheri T. Holley, Quincy, IL, for Plaintiffs.

James P. Baker, Springfield, IL, Carol J. Hansen Posegate, Springfield, IL, W. Gary Kohlman, Devki K. Virk, Robert M. Weinberg, Washington, DC, Mary Lee Leahy, Springfield, IL, for Defendants.

## *ORDER*

SCOTT, District Judge.

This matter comes before the Court on Defendants' Motions to Dismiss Plaintiffs' Amended Complaint (d/e 15, d/e 19, d/e 21). Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Amended Complaint claims that Defendants engaged in racketeering activities in violation of 18 U.S.C. § 1961 et. seq. Plaintiffs in this case include Titan International, Inc., Titan Tire Corporation, and Titan Tire Corporation of Natchez. These Plaintiffs engage in the business of manufacturing off-highway tires. Plaintiff Titan Wheel Corporation of Illinois manufacturers off-highway wheels. Defendants include the United Steelworkers of America (USWA), USWA Districts 1, 7, 8, 9, 10, 11, and 12, USWA Local 164, USWA Local 303, and USWA Titan International Council (USWA's Titan Council), which Plaintiffs allege encompasses each of the aforementioned groups, and various individual officers and members of the USWA (hereinafter Individual Defendants). For the reasons stated below, Defendants' Motions to Dismiss are DENIED.

## FACTS

Plaintiffs allege that Defendants participated in racketeering activities in violation of the Racketeering Influenced and Corrupt Organizations Act (RICO). 18 U.S.C. § 1961 et. seq. Plaintiffs allege that each racketeering activity was "participated in, authorized, or ratified" by one or more Defendants, and that each Defendant was a member of one or more enterprises. *Am. Compl.* ¶ 76. Plaintiffs allege four enterprises in the Amended Complaint: Steelworkers Enterprise, Steelworkers Pension Enterprise, Titan Tire Enterprise, and Titan Tire of Natchez Enterprise.

### A. Alleged Enterprises

#### 1. Steelworkers Enterprise

The first enterprise referenced in the Amended Complaint is the "Steelworkers Enterprise." In the Amended Complaint, each Defendant is included as a member of this enterprise, but Plaintiffs also allege that the enterprise included parties unaware of Defendants' actions. Am. Compl. ¶ 79. Plaintiffs state that this enterprise is an association-in-fact enterprise.[1] Plaintiffs claim that this enterprise had the legitimate purpose of engaging in labor negotiations for workers, but that Defendants simultaneously used this enterprise "to further their illegitimate purpose of extorting money and property from Titan." *Am. Compl.* ¶ 78. Plaintiffs stated that this enterprise will continue indefinitely. *Am. Compl.* ¶ 85.

#### 2. Steelworkers Pension Enterprise

The second enterprise referenced by Plaintiffs is the "Steelworkers Pension Enterprise." *Am. Compl.* ¶ 87. Plaintiffs state that all Defendants, as well as the non-party Steelworkers Pension Trust, were members of this enterprise.

Plaintiffs state that this is also an association-in-fact enterprise. Plaintiffs allege that the legitimate purpose of Steelworkers Pension Enterprise was to provide cost-effective and qualified pension plans for Steelworker members, retirees, and their family members. However, Plaintiffs claim that this enterprise conspired to extort money from them. *Am. Compl.* ¶ 87. Plaintiffs allege that because the Steelworkers Pension Enterprise engaged in legitimate, as well as illegitimate activities, it qualifies as an enterprise separate and apart from a pattern of racketeering activity. *Am. Compl.* ¶ 94. Plaintiffs allege that this enterprise will continue into the future. *Am. Compl.* ¶ 95.

#### 3. Titan Tire Enterprise

The third alleged enterprise is referred to in the Amended Complaint as the "Titan Tire Enterprise." *Am. Compl.* ¶ 97. This alleged enterprise consists of Titan Tire Corporation. Plaintiffs state that Defendants conspired to maintain an interest in or control of this enterprise through "a pattern of racketeering activity." *Am. Compl.* ¶ 97.

#### 4. Titan Tire of Natchez Enterprise

The fourth enterprise alleged is the "Titan Tire of Natchez Enterprise" consisting solely of Titan Tire Corporation of Natchez. Plaintiffs state that Defendants also conspired to acquire or maintain an interest in or control of the Titan Tire of Natchez Enterprise through a pattern of racketeering activity. *Am. Compl.* ¶ 98.

### B. Plaintiffs' Allegations of Extortion

The Amended Complaint states that beginning on May 1, 1998, and lasting

---

**1.** RICO defines an association-in-fact enterprise as "a union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

through the present time, Defendants engaged in strikes against Plaintiffs and implemented a massive conspiracy to extort money. *Am. Compl.* ¶ 99. Defendants allegedly conspired "to receive income from a pattern of racketeering activity" and to use or invest such income in the Steelworkers Pension Enterprise. *Am. Compl.* ¶ 99. Plaintiffs allege that a pattern of extortionate acts was organized by the USWA's Titan Council. Defendants sought to extort the following money from Plaintiffs:

(a) lifetime medical benefits for all retired Titan employees who were members of the USWA, which would have cost Titan millions of dollars;

(b) unfreezing the pension plan of Titan's predecessor at the Des Moines facility or, in the alternative, substantial contributions by Titan to the Steelworkers Pension Trust;

(c) an increase in wages for those Titan employees who were represented by the USWA;

(d) Titan's express agreement that it be neutral with respect to the USWA's attempts to represent the employees at those Titan facilities that were not unionized and whose employees were not represented by the USWA;

(e) dues from USWA members or prospective USWA members employed by Titan.

*Am. Compl.* ¶ 102.

Defendants implemented the extortion by "making numerous bomb threats, committing numerous acts of physical violence and property damage, filing and prosecuting numerous frivolous and objectively baseless workers' compensation claims, and unlawfully interfering with Titan's existing and prospective business relations."

2. "Titan" includes all Plaintiffs.

*Am. Compl.* ¶ 2. Plaintiffs state that each Defendant knowingly "participated in, authorized, or ratified the racketeering activity." *Am. Compl.* ¶ 103.

### 6. Bomb Threats

Plaintiffs allege that Defendants made bomb threats to Titan[2] facilities in: Quincy, Illinois; Des Moines, Iowa; and Natchez, Mississippi. Bomb threats were received on twelve separate occasions, and no Titan facility received a bomb threat before the strikes by Defendants began. *Am. Compl.* ¶ 105. Plaintiffs state that each time a Titan facility received a bomb threat, that facility was forced to evacuate employees and shut down operations. *Am. Compl.* ¶ 106. Defendants allegedly made these threats to extort the concessions listed above.

### 7. Acts of Physical Violence and Property Damage

Plaintiffs assert that Defendants participated in several acts of physical violence and property damage in order to extort money from Titan. Plaintiffs allege that Defendants struck Titan employees or independent contractors, fired weapons outside the homes of Titan employees, smashed the windows and slashed the tires of Titan employees, threw roofing tacks on driveways of the homes of Titan's employees, and chased Titan employees. *Am. Compl.* ¶ 119. Additionally, Plaintiffs allege that Defendants threatened Titan employees and independent contractors. *Am. Compl.* ¶ 120.

### 8. Filing and Prosecuting Frivolous and Objectively Baseless Workers' Compensation Claims

Plaintiffs allege that as part of Defendants' efforts to extort money and prop-

erty from Titan and inflict damage upon Titan, Defendants filed a large number of frivolous and objectively baseless workers' compensation claims. Between May and November of 1999, members of USWA 164 filed 83 separate workers compensation claims, 75 of which were filed on the same day. *Am. Compl.* § 228. Each workers' compensation claim alleged hearing loss as a result of employment at a Titan facility. Hearing tests, conducted yearly by Titan, did not reveal that these employees suffered compensable hearing loss. *Am. Compl.* ¶ 229. All 83 claimants received legal advice from the same attorney. *Am. Compl.* ¶ 230. As a result of such claims, Cigna, Titan's Insurance Carrier for workers' compensation claims, cancelled Titan's insurance policy. Plaintiffs allege that Titan must now pay higher premiums for insurance. *Am. Compl.* ¶ 231. On July 30, 2000, 82 of the 83 claimants amended their workers' compensation claims to add a claim for tinnitus, a hearing ailment. Plaintiffs allege that claimants did this despite the fact that many of them stated in sworn depositions that they never experienced symptoms of tinnitus. *Am. Compl.* ¶ 232.

### 9. Unlawful Interference with Business Relations

Plaintiffs also maintain that as part of Defendants' scheme to extort money, they tried to injure Plaintiffs' relationships with several third parties. Plaintiffs allege that Defendants traveled around the country and disseminated false and misleading information about Titan's operations and products to customers and dealers. *Am. Compl.* ¶ 399. Plaintiffs allege that Defendants published numerous articles containing false and baseless information about Titan's operations and products. Plaintiffs allege that Defendants initiated a baseless shareholder derivative suit to drive down the price of Titan's stock. Finally, Plaintiffs allege that Defendants organized a boycott against Titan's primary lender, Harris Bank. *Am. Compl.* ¶ 399. Plaintiffs maintain that as a result of this interference with business relations, they have suffered damages. *Am. Compl.* ¶ 478.

### C. Claims for Relief

Plaintiffs' Amended Complaint consists of five claims for relief. Claim I alleges a violation of RICO, 18 U.S.C. § 1962(c). It alleges that each Defendant is a person participating in an enterprise which has engaged in a pattern of racketeering activities involving extortion to violate § 1962(c). Claim II alleges a violation of § 1962(d) for conspiring to violate § 1962(c). Plaintiffs allege that Defendants formed an agreement to commit racketeering activities in violation of § 1962(c). Claim III alleges a violation of § 1962(d) for conspiring to violate § 1962(a). Plaintiffs maintain that Defendants formed an agreement to receive income from a pattern of extortion, causing Plaintiffs' injury. Claim IV alleges a violation of § 1962(d) for conspiring to violate § 1962(b). Claim IV alleges that Defendants engaged in a conspiracy to acquire or maintain an interest in or control of Titan Tire Enterprise and Titan Tire of Natchez Enterprise through a pattern of extortionate activities. Plaintiffs allege that this conspiracy caused them injury.

Claims V and VI are state law claims. In Claim V, Plaintiffs allege that Defendants tortiously interfered with Plaintiffs' prospective business relationships with various third parties, and without lawful purpose. In Claim VI, Plaintiffs allege that Defendants engaged in a civil conspiracy to extort money from Plaintiffs by tortiously interfering with Plaintiffs' busi-

ness relations with third parties. Plaintiffs allege that they have suffered damages because of this conspiracy.

## STANDARD OF REVIEW

For the purposes of this Motion, the Court must accept as true all well-pleaded factual allegations contained in the Amended Complaint and draw inferences in the light most favorable to the non-moving party. *Hager v. City of West Peoria*, 84 F.3d 865, 868–869 (7th Cir.1996); *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177, 178 (7th Cir.1996). A complaint should not be dismissed unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996).

## ANALYSIS

D. Claim I: Alleged Violation of 28 U.S.C. § 1962(c)

For Plaintiffs to adequately allege a violation of 28 U.S.C. § 1962(c), they must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In Defendants' briefs supporting their Motions to Dismiss, Defendants claim that Plaintiffs have not sufficiently alleged these elements. This Court disagrees and finds that Plaintiffs have sufficiently alleged each element necessary to state a claim for violation of § 1962(c).

1. Conduct

█ In order for Plaintiffs properly to allege that Defendants have participated in the conduct of the enterprises' affairs, they must show that Defendants participated in or conducted the "operation or management" of an enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Plaintiffs have adequately alleged that each Defendant conducted or participated in predicate acts to state a § 1962(c) claim because "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184, 113 S.Ct. 1163. According to Plaintiffs' Amended Complaint, each Defendant knowingly "participated in, authorized, or ratified the racketeering activity." *Am. Compl.* ¶ 103. Plaintiffs' Amended Complaint states that each Defendant participated in conduct to further the illegitimate purpose of extortion. *Am. Compl.* ¶¶ 78, 87.

Defendants argue that in order to be exposed to liability under § 1962(c), Plaintiffs must demonstrate that each Defendant managed the affairs of an enterprise. *Individual Defs.' Mem. in Sup. of Mot. to Dismiss*, p. 13., *Int'l Defs.' Mem. in Sup. of Mot. to Dismiss*, p. 33. However, Plaintiffs must allege only that Defendants have participated in the management or operation of racketeering activities. Plaintiffs do not need to allege that each Defendant was a manager or high level employee. *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1324 (7th Cir.1998). *See also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 n. 3 (7th Cir.1998). Instead, in an association-in-fact enterprise, like the enterprises alleged here, Plaintiffs' allegations that predicate acts of racketeering were knowingly undertaken at the direction of the management of the enterprise are sufficient to state a claim. *Am. Compl.* ¶ 100; *MCM Partners, Inc. v. Andrews–Bartlett & Associates, Inc.*, 62 F.3d 967, 979 (7th Cir.1995).

Plaintiffs have alleged that each Defendant knowingly implemented the decisions of upper management. Furthermore, Plaintiffs state that the Individual

Defendants acted under the directions of the USWA to participate in the conduct of the enterprise. Therefore, Plaintiffs have adequately alleged that Defendants conducted or participated in the conduct or affairs of the enterprise.

### 2. Presence of an Enterprise

■ A RICO enterprise is defined as "an ongoing 'structure' of persons associated through time, joined in purpose and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir.1990). The enterprises that participated in or conducted racketeering activity are the "Steelworkers Enterprise" and the "Steelworkers Pension Enterprise." In order to state a claim under § 1962(c), Plaintiffs must allege at least two separate entities—individuals and an enterprise distinct from the individuals. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 121 S.Ct. 2087, 2089, 150 L.Ed.2d 198 (2001); *See also Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 400 (7th Cir.1984). Plaintiffs have adequately alleged the presence of both enterprises because both are separate and distinct from the persons involved in the racketeering activities.

Defendants argue that Plaintiffs have not adequately alleged the presence of an enterprise separate from the persons conducting the pattern of alleged extortion. *Int'l Defs.' Mem. in Sup. of Mot. to Dismiss*, p. 25. Under § 1962(c), Defendants cannot be liable for conducting their own affairs through a pattern of racketeering. *Cedric Kushner Promotions, Ltd.*, 121 S.Ct. at 2089. Because Plaintiffs' Amended Complaint al-

leges an association-in-fact enterprise, it must identify an association that is different from the individuals that make up the association. *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 643 (7th Cir.1995).[3]

In examining the Amended Complaint in the light most favorable to Plaintiffs, Plaintiffs have adequately alleged the presence of association-in-fact enterprises sufficiently distinct from the persons alleged to have participated in racketeering activity. Enterprises may include legitimate and illegitimate goals. *Haroco, Inc.*, 747 F.2d at 394. The enterprises are alleged to have engaged in legitimate and illegitimate conduct. Not all participants in each enterprise are alleged to have participated in racketeering activity. *Am. Compl.* ¶¶ 78, 87. Therefore, the persons and the enterprises are sufficiently distinct to state a claim under RICO. Plaintiffs have adequately alleged that the Individual Defendants participated in the conduct of the enterprises' affairs, not just their own affairs.

### 3. Pattern of Racketeering

■ Plaintiffs must also allege a pattern of racketeering activity, consisting of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). Additionally, Plaintiffs must show that "the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)(emphasis in original). This re-

---

**3.** In its Consolidated Mem. of Law in Opp. of Mot. to Dismiss, Plaintiffs state that the differentiation between persons liable and the enterprise does not apply when the enterprise is an association-in-fact enterprise. This state-

ment is not correct. *See Richmond*, 52 F.3d at 643. However, the Court finds that Plaintiffs have alleged sufficient differences to survive Defendants' Motion to Dismiss.

quires proof of continuity and relatedness. *Id.*

The Seventh Circuit has set out various factors to determine if there is continuity between the predicate acts. These factors "include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 780 (7th Cir.1994) (*quoting Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986)). Much emphasis is placed on the length of time over which the acts occurred. *Id.*

Plaintiffs assert that racketeering activities by Defendants took place over a long period of time (in excess of three years), and that these activities will continue into the future. *Am. Compl.* ¶ 99. Although Plaintiffs have not alleged a large number of victims or schemes, the schemes alleged are very serious because they involve violence, threats, and damage to property. Additionally, the number of victims is only a factor to be considered; it is not dispositive. *J.D. Marshall Intern., Inc. v. Redstart, Inc.,* 935 F.2d 815, 821 (7th Cir.1991). Plaintiffs have alleged hundreds of acts which constitute racketeering and have claimed separate injuries resulting to each Plaintiff involved. Therefore, the Court finds that Plaintiffs have adequately alleged continuity between the alleged racketeering activities.

Plaintiff must also demonstrate that the Defendants' actions were related to each other. *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893 (1989). The Individual Defendants argue that they may not be held responsible for the acts of third parties and that their actions do not individually constitute a pattern of racketeering activity. The Individual Defendants assert that Plaintiffs have not adequately alleged that the Individual Defendants participated in a pattern of racketeering conduct. *Ind. Defs'. Mem. in Sup. of Mot. to Dismiss* p. 21–22, 25–28.

Plaintiffs have alleged that all Defendants, including the Individual Defendants, extorted money from the Plaintiffs. Plaintiffs must allege that each Defendant participated in extortion through participating in or managing the affairs of the enterprises. Plaintiffs must show that each Defendant knowingly participated in an enterprise that extorted money and that committed related predicate acts. Predicate acts are deemed "related" when they are close in time to one another, involve the same victim, or involve the same type of misconduct. *Vicom, Inc.,* 20 F.3d at 779. Plaintiffs have alleged that the enterprises committed racketeering activities that were close in time to each other, involving the same victims. Many of the predicate acts alleged also demonstrate similar types of threats, violence, or property damage. Thus, Plaintiffs have sufficiently alleged that the enterprises continuously committed related predicate acts, and that the Individual Defendants knowingly participated in the enterprises' illicit purposes. Plaintiffs have sufficiently pled a pattern of racketeering activity.

4. Racketeering Activity

 Defendants also argue that Plaintiffs' Amended Complaint fails to allege adequately that Defendants engaged in racketeering activity. Congress has defined "racketeering activity" as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law . . . [or] any

act which is indictable under any of the following provisions of title 18, United States Code ...." 18 U.S.C. § 1961(1). The list of racketeering activities set forth in § 1961(1) is an exhaustive one. *Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1345 (7th Cir.1995).

Plaintiffs claim that Defendants used bomb threats, violence, threats, and other illegal acts to force Plaintiffs to give them money. Plaintiffs claim these actions constitute extortion under the laws of Illinois, Mississippi, and Iowa.

Illinois law states that "A person commits theft when he knowingly obtains by threat control over property of the owner." 720 Ill. Comp. Stat. 5/16–1(3). In Illinois a threat is defined as "a menace, however communicated, to (a) inflict physical injury on the person threatened or any other person or on property; or ...(c) commit any criminal offense; or (d) expose any person to hatred contempt or ridicule; or ... (f) harm the credit or business repute of any person; or ... (i) bring about or continue a strike, boycott, or other similar collective action if the property is not demanded or received for the benefit of the group which he purports to represent." 720 Ill. Comp. Stat. 5/15–5.

Plaintiffs also claim that Defendants violated Iowa's extortion law. This law states that "A person commits extortion if the person does any of the following with the purpose of obtaining for oneself or another anything of value, tangible or intangible ... (1) Threatens physical injury on some person or to commit any public offense. (2) Threatens to accuse another of a public offense. (3) Threatens to expose any person to hatred, contempt, or ridicule. (4) Threatens to harm the credit or business or professional reputation of any person ... (7) Threatens to wrongfully injure the property of another." Iowa Code § 711.4.

Plaintiffs also contend that Defendants violated Mississippi's law prohibiting extortion, which states that "A person is guilty of extortion if he purposely obtains property or things of value of another by threatening to inflict bodily injury on anyone or commit any other criminal offense." Miss.Code. Ann. § 97–3–82.

Plaintiffs have adequately alleged extortion by Defendants under Illinois, Iowa, and Mississippi extortion laws. Plaintiffs have alleged acts of physical violence, property damage, and bomb threats which occurred in each of these states. Plaintiffs state that each activity was undertaken by Defendants' enterprises to extort money from Plaintiffs. These alleged threats coupled with a purpose of extorting money are adequate to state a claim under any of the aforementioned statutes. Additionally, in Iowa and Illinois, Plaintiffs allege filing and prosecuting baseless workers' compensation claims and destruction of business relationships. Examining these allegations in the light most favorable to Plaintiffs, the Court finds they are sufficient to state a claim. This activity could harm the business reputation of Plaintiffs. *See* 720 Ill. Comp. Stat. 5/15–5(f); Iowa Code § 711.4(4).

Defendants argue that the activities alleged by the Plaintiffs are not racketeering activities under § 1961(1), and therefore, Plaintiffs cannot state a claim for a RICO violation by alleging these activities took place. Defendants are correct in their assertion that bomb threats, violence, property damage, and threats are not among the activities listed as predicate RICO activities, but, committing these activities may constitute extortion. *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 253, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)(holding that extortion need not

always be the direct taking of money for an economic benefit). The factual allegations of racketeering activity collectively meet the definitions of extortion under all relevant state extortion statutes.

Defendants argue that allegations that they instituted frivolous lawsuits must fail as a matter of law because filing frivolous lawsuits cannot constitute a predicate act under RICO. Defendant is correct in pointing out that groundless lawsuits alone do not constitute a predicate racketeering activity for a lawsuit under § 1962(c). *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 266–67 (8th Cir.1984); *Park South Assocs., v. Fischbein*, 626 F.Supp. 1108 (S.D.N.Y. 1986) (*aff'd in Park South Assocs. v. Fischbein*, 800 F.2d 1128 (2d Cir.1986)). However, reading the allegations in the light most favorable to Plaintiffs, filing groundless lawsuits could constitute one part of the alleged conspiracy to extort money under state law.

Additionally, Defendants argue that even if the acts are extortion under state law, many of the activities alleged as extortion are protected by the First Amendment. *Int'l Defs'. Mem. in Sup. of Mot. to Dismiss* p. 6–9; *Individual Defs'. Mem. in Sup. of Mot. to Dismiss* p. 25–28; *Locals 163 & 303 Defs'. Mem. in Sup. of Mot. to Dismiss* p. 5. In the Amended Complaint, Plaintiffs allege that any speech by the Defendants was false and intended to threaten Plaintiffs and coerce the payment of money. Additionally, Plaintiffs allege that much of the "speech" by the Defendants was violent or damaging to Plaintiffs' property. The First Amendment does not protect threatening speech. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 773, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). Additionally, the First Amendment does not protect violent conduct. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Therefore, accepting Plaintiffs' allegations as to the false, violent, and threatening content of Defendants' speech and conduct, the First Amendment offers no protection for such activity.

Therefore, the Court finds that Plaintiffs have sufficiently alleged conduct of an enterprise sufficient to constitute a pattern of racketeering activity. Thus, the Motions to Dismiss Claim I are denied.

**B. The Conspiracy Claims—Claim II, Claim III, and Claim IV**

Claims II, III, and IV allege that Defendants engaged in a conspiracy to violate several RICO provisions. In Claim II, Plaintiffs allege that Defendants violated § 1962(d) by conspiring to violate § 1962(c). Section 1962(d) is not a substantive RICO offense. Instead, it allows Plaintiffs to allege that there was a conspiracy to violate §§ 1962(a), (b), or (c). *MCM Partners, Inc. v. Andrews–Bartlett & Asso., Inc.*, 62 F.3d 967 (1995). For each conspiracy claim, Plaintiffs must adequately allege "(1) that the defendants agreed to acquire or maintain an interest in or control of an enterprise or to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that defendants further agreed that someone would commit at least two predicate acts to accomplish those goals." *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 961 (7th Cir.1996).

Defendants state several times throughout their Memoranda that Plaintiffs have not alleged the conspiracy claims with sufficient particularity and attention to detail. According to Federal Rule of Civil Procedure 8(a), a short and plain statement of the facts is all that is required to state a claim. Plaintiffs have met this require-

ment. Cases that Defendants cite as requiring pleading with particularity allege fraud as the act of racketeering. Fraud claims must always be pled with particularity. See Fed.R.Civ.P. 9(b). Defendants' RICO claims alleging extortion as the predicate act, however, do not require pleading with particularity.

### 1. Claim II, Conspiring to Violate § 1962(c)

■ As the Court stated previously, Plaintiffs have properly alleged that overt acts committed by Defendants violate § 1962(c), a substantive RICO statute. Although each Defendant did not personally participate in at least two predicate acts to accomplish the conspiracy, this is not required. Each Defendant only needed to agree to participate in the commission of criminal activity to accomplish the extortion. According to the Amended Complaint, all Defendants knew that they were participating in criminal activities that would benefit their goals of extorting money from Plaintiffs for the benefit of the Steelworkers Enterprise and the Steelworkers Pension Enterprise. *Gagan*, 77 F.3d at 961. Therefore, Plaintiffs have adequately alleged a conspiracy to violate § 1962(c).

Defendants argue that Plaintiffs have not alleged the substantive elements of § 1962(c) sufficiently to allege a conspiracy under § 1962(d). *Int'l Defs'. Mem. in Sup. of Mot. to Dismiss* p. 35–43; *Individual Defs'. Mem. in Sup. of Mot. to Dismiss* p. 23–25; *Locals 163 & 303 Defs'. Mem. in Sup. of Mot. to Dismiss* p. 12–13. There are several reasons this argument fails. The Court has previously demonstrated that Plaintiffs have adequately alleged a cause of action under § 1962(c). Plaintiffs set forth the necessary requirements of conduct or participation by persons in an enterprise through a pattern of racketeering activi-

ty. Consequently, they sufficiently alleged all necessary requirements to state a valid claim under § 1962(c).

Even if Plaintiffs had not stated a valid claim under § 1962(c), Plaintiffs have still alleged sufficient facts to state a claim for a conspiracy to violate § 1962(c), because they have alleged an agreement by all Defendants to participate in the goal of extorting money from Plaintiffs. Plaintiffs do not have to demonstrate an actual violation of a substantive RICO provision to properly allege a conspiracy claim. *Goren*, 156 F.3d at 731.

### 2. Claim III, Conspiring to Violate § 1962(a)

■ In Claim III, Plaintiffs allege that Defendants engaged in a conspiracy to violate § 1962(a). Section 1962(a) states, "It shall be unlawful for any person who has received any income ... from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in or the establishment or operation of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce." In order to properly allege a conspiracy to violate § 1962(a), Plaintiffs must allege that Defendants have agreed that income received through racketeering activities would be used or invested in the acquisition or establishment of an enterprise that affected interstate commerce. In the Amended Complaint, Plaintiffs stated the primary reason for the Defendants' alleged extortionate activities was to invest money in the Steelworkers Pension Enterprise. *Am. Compl.* ¶ 100. The Amended Complaint alleges that Defendants entered into an agreement that income received directly or indirectly through their extortionate activities

would be used in the operation of an enterprise which is engaged in activities affecting interstate commerce. *Am. Compl.* ¶ 460.

Defendants point out that the majority of circuits require Plaintiffs to demonstrate that the use or investment of racketeering income is the proximate cause of the Plaintiffs' injury in order to state a claim under § 1962(a) or (b).[4] Defendants argue that Plaintiffs cannot state a claim for such a violation because they have not shown that an injury occurred as a result of Defendants' use or investment of income from racketeering activities. *Int'l Def's. Mem. in Sup. of Mot. to Dismiss* p. 35–36; *Individual Def's. Mem. in Sup. of Mot. to Dismiss* p. 23–24. However, Plaintiffs are not obligated to raise such an allegation because they have not alleged a substantive violation of § 1962(a) or (b). Instead, Plaintiffs have alleged that Defendants violated § 1962(d) for conspiring to violate § 1962(a) or (b), therefore, Plaintiffs must only allege the presence of an agreement and necessary predicate activity. *Am. Compl.* ¶¶ 456–61. Plaintiffs have sufficiently alleged an agreement to use or invest the income obtained by extortion. Therefore, Plaintiffs have sufficiently alleged a conspiracy to violate § 1962(a).

3. Claim IV, Conspiring to Violate § 1962(b)

■ Plaintiffs also claim that Defendants conspired to violate § 1962(b) by agreeing to acquire or to control an interest in the Titan Tire Enterprise and the Titan Tire of Natchez Enterprise. *Am. Compl.* ¶ 466. Plaintiffs contend

that Defendants did this through numerous racketeering acts and threats involving extortion. *Am. Compl.* ¶ 100.

Defendants argue that Plaintiffs have not properly stated a claim under § 1962(b) because they have not demonstrated that there was an agreement to "control" Plaintiffs' enterprise. *Int'l Def's'. Mem.* p. 38–40. To properly state a claim for a conspiracy to violate § 1962(b), Plaintiffs' allegations of Defendants' agreement to control or participate in the enterprise need not rise to the level of formal control. *Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, 653 (7th Cir.1984)(*rev'd on other gds.*). To allege sufficient control, Plaintiffs must allege that Defendants agreed to manipulate Plaintiffs' activities through predicate acts which would cause Plaintiffs to make decisions it would not have otherwise made. *Id.See also Ikuno v. Yip*, 912 F.2d 306, 310 (9th Cir.1990). Plaintiffs have alleged that Defendants conspired to engage in racketeering activities in an attempt to manipulate Plaintiffs' hiring decisions, wage decisions and other decisions. *Am. Compl.* ¶ 102. In examining the Amended Complaint in the light most favorable to Plaintiffs, it adequately states a claim for a conspiracy to violate § 1962(b).

C. Claim V, Tortious Interference with Prospective Business Relations

■ Plaintiffs claim that Defendants tortiously interfered with their prospective business relations with banks, insurers, customers, shareholders, employees, and independent contractors.

4. In their Memoranda, Plaintiffs and Defendants spend a great deal of time discussing whether Plaintiffs must demonstrate an injury as a result of the investment or use of income derived from racketeering activity in order to have standing. This issue has not been decided by the Seventh Circuit. *See Vicom*, 20 F.3d at 779 n. 6. The Court does not have to determine if there is such a standing requirement in this case because there is no alleged substantive violation of § 1962(a) or (b).

Am. Compl. ¶ 399. Plaintiffs allege that this interference caused economic injury to all Plaintiffs. *Am. Compl.* ¶ 470. To allege a tortious interference with prospective business relations in Illinois, Plaintiffs must allege that they had a reasonable expectation of entering into a valid business relationship, that Defendants knew of Plaintiffs' interest, that the Defendants purposefully interfered with such relationship, and that damages resulted to Plaintiffs. *Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 877–78 (1991). The elements for an interference with prospective business relations are similar in Iowa and Mississippi. *See Burke v. Hawkeye Nat. Life Ins. Co.,* 474 N.W.2d 110, 114 (Iowa 1991); *see also Par Industries, Inc. v. Target Container Co.,* 708 So.2d 44, 48 (Miss.1998). Plaintiffs have properly alleged the existence of such relationships between Plaintiffs and third-party customers, shareholders, dealers, and lenders. They have also alleged that each Defendant knowingly participated in conduct to hurt the relationships between Plaintiffs and third parties and that Plaintiffs suffered injury because of these alleged actions. Therefore, Plaintiffs have properly pled this claim.

### D. Claim VI: Civil Conspiracy Claim

 Plaintiffs have sufficiently alleged that Defendants engaged in a civil conspiracy to interfere in Plaintiffs' prospective business relationships with third parties. Plaintiffs alleged that Defendants entered into an agreement to threaten and boycott third parties because of their relationship with Plaintiffs, filed frivolous suits to affect Plaintiffs' relationships with third parties, disseminated false information about Plaintiffs to third parties, and engaged in acts of property damage against employees and independent contractors. *Am. Compl.* ¶ 474. A civil conspiracy for interference with business relationships is ac-

tionable. *Blivas & Page, Inc. v. Klein,* 5 Ill.App.3d 280, 282 N.E.2d 210, 214 (1972). Therefore, Plaintiffs have sufficiently pled this civil conspiracy to state a claim.

### CONCLUSION

Examining the Amended Complaint in the light most favorable to Plaintiffs, the allegations are sufficient to state each claim alleged. Therefore, Defendants' Motions to Dismiss (d/e 15, d/e 19, d/e 21) are DENIED. Defendants are ordered to answer the Amended Complaint by November 21, 2001.